UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIXIOR GLOBAL LOGISTICS, LLC, a California limited liability company; and E-COMM FULFILLMENT 3PL, a California corporation,<br><br>Plaintiffs,<br><br>-against-<br><br>JOSEPH BIBI, an individual; and DOES 1 through 10,<br><br>Defendants. | **MEMORANDUM AND ORDER**<br>Case No.<br>1:23-cv-03530-FB-VMS |

Appearances:

*For the Plaintiffs:*
PETER W. ROSS
RICHARD A. SCHWARTZ
Ross LLP
1900 Avenue of the Stars, Suite 1225
Los Angeles, California 90067

DAVID E. POTTER
CHRISTINA DELLAPORTE
Lazare Potter Giacovas & Moyle LLP
747 Third Avenue
New York, New York 10017

*For the Defendant:*
MARSHALL A. MINTZ
Mintz Law PLLC
260 Madison Avenue, 18th Floor
New York, New York 10016

JOSEPH R. COROZZO
Rubinstein & Corozzo, LLP
260 Madison Avenue, 22nd Floor
New York, New York 10016

**BLOCK**, Senior District Judge:

Plaintiffs Pixior Global Logistics, LLC ("Pixior") and E-Comm Fulfillment 3PL ("E-Comm") operate warehouses. They allege that defendant Joseph Bibi fraudulently induced them to store recalled disinfectant wipes that his company, Edward Roberts, LLC ("Edward Roberts"), then abandoned without paying. They sue for fraudulent concealment (Count One), intentional misrepresentation (Count

Two), and negligent misrepresentation (Count Three).[1] Bibi moves for summary judgment. ECF No. 43. Plaintiffs move for leave to rely on a declaration they served after their opposition deadline. ECF No. 47.

For the following reasons, plaintiffs' motion is GRANTED. Bibi's motion is GRANTED as to Count Three and DENIED as to Counts One and Two.

## I. BACKGROUND

The following facts are undisputed unless noted.

Edward Roberts is a New York limited liability company of which Bibi is a member. Def.'s 56.1 ¶ 1 (ECF No. 43-2). In late 2020, it began selling "DisinfeX" disinfectant wipes (the "Product") to Walmart. *Id.* ¶¶ 5–6. On February 9, 2021, in an email on which Bibi was copied, Walmart told Edward Roberts that it would send all of the Product back because it was not registered with the EPA for legal sale. Def.'s Ex. F (ECF No. 43-3).

In February 2021, Bibi called Chuck Price, a sales representative at Advance Warehouse Logistics ("AWL"), about storing the returned Product. Def.'s 56.1 ¶¶

---

[1] The Court has diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). Plaintiffs are citizens of California: E-Comm is a California corporation with its principal place of business there, and Pixior is a limited liability company whose sole member resides there. Compl. ¶¶ 5–6 (ECF No. 1); *see Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Bibi is a citizen of New York. Compl. ¶ 7; Answer ¶ 7 (ECF No. 6). Plaintiffs seek more than $29.6 million in compensatory damages. Compl. at 21.

9–10; Price Decl. ¶¶ 2, 4 (ECF No. 44-6). Bibi does not recall what was said. Def.'s 56.1 ¶ 10. According to Price, Bibi said that the Product did not comply with EPA labeling requirements and that Walmart was returning nearly three million units "for relabeling"; asked whether AWL could store the Product "for a short period of time, until it could be relabeled"; and represented that Edward Roberts "would timely pay all of the customary charges." Price Decl. ¶ 4. When Price said that AWL lacked room for all of it, Bibi asked him to find space "wherever it could be found." *Id.* ¶ 5.

Price then called Simon Bouzaglou of Pixior and Cristobal Gastelum of E-Comm and relayed the substance of what Bibi had told him. Price Decl. ¶ 6; Bouzaglou Decl. ¶¶ 3–4 (ECF No. 44-5); Gastelum Decl. ¶¶ 3–4 (ECF No. 44-3). Each agreed to store the Product, with Edward Roberts to pay the charges. Bouzaglou Decl. ¶ 5; Gastelum Decl. ¶¶ 5–6.

Deliveries to Pixior's warehouse in Milford, Connecticut, and E-Comm's warehouse in Riverside, California, began in March 2021. Amallal Decl. ¶ 2 (ECF No. 44-2); Bouzaglou Decl. ¶ 5; Gastelum Decl. ¶¶ 5, 7. Edward Roberts paid plaintiffs' invoices while deliveries continued and then stopped. Amallal Decl. ¶ 5; Gastelum Decl. ¶ 9.

## II. DISCUSSION

### A. The Price Declaration

Plaintiffs served Price's declaration on July 28, eight days after their opposition deadline, explaining that Price, a non-party, had been on a cruise, likely without internet access. ECF No. 47 at 1. Bibi asks the Court to strike it, Def.'s Reply 1–2 (ECF No. 45), but he suffered no prejudice; his reply addresses the declaration on the merits, *id.* at 9. Given the short delay and the lack of prejudice, the neglect was excusable, *see* Fed. R. Civ. P. 6(b)(1)(B); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), and the Court considers the declaration without further briefing.

### B. Count Three: Negligent Misrepresentation

#### *1. Choice of Law*

The parties agree that New York law requires a "special relationship" for negligent misrepresentation and that California law does not. Def.'s Mem. 7 (ECF No. 43-4); Pls.' Mem. 5 (ECF No. 44-7). Where conflicting conduct-regulating rules are at issue, "the law of the jurisdiction where the tort occurred will generally apply." *AHW Inv. P'ship v. Citigroup Inc.*, 661 F. App'x 2, 5 (2d Cir. 2016) (internal quotation marks omitted).

Bibi's alleged conduct occurred in New York: Bibi lives in Brooklyn, Bibi Dep. 21:22–24, and Edward Roberts listed its address as 17 State Street in Manhattan

on the email Bibi sent while arranging warehouse space, *see* Def.'s Ex. G. California's asserted interest in "preventing potential explosions in warehouses," Pls.' Mem. 6, has nothing to do with the special-relationship rule and no bearing on Pixior, whose warehouse is in Connecticut. New York law applies.

### *2. Special Relationship*

Under New York law, a special relationship in a commercial setting arises only where the speaker has unique expertise or occupies a special position of confidence and trust with the plaintiff. *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996). Plaintiffs had no prior relationship with Bibi, *see* Bibi Dep. 67:12–14, and the alleged misrepresentations reached them only through Price, *see* Bouzaglou Decl. ¶¶ 3–4; Gastelum Decl. ¶¶ 3–4.

Plaintiffs' new bailment theory, Pls.' Mem. 6–10, does not help them: a bailment arises on delivery, after the alleged misrepresentations, and the authorities plaintiffs cite concern physical harm, not economic loss, *see, e.g.*, Restatement (Second) of Torts § 388. Bibi is entitled to summary judgment on Count Three.

## **C. Counts One and Two: Fraud**

Both sides analyze the fraud claims under New York law, and the Court does the same. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). Because New York requires clear and convincing proof of fraud, the question is whether a reasonable jury could find each element by that standard. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 254–55 (1986); *Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 558 (S.D.N.Y. 2009). Bibi argues that plaintiffs cannot prove he made any misrepresentation or omission, that they cannot show reliance, and that he had no duty to disclose. Def.'s Mem. 10–17. Genuine disputes of material fact preclude summary judgment on each point.

***1. The Statements***

Bibi's principal argument is that there is no evidence of what he told Price or what Price told plaintiffs. Def.'s Mem. 10–11. The record now supplies both. Price recounts what Bibi said, Price Decl. ¶ 4, and Bouzaglou and Gastelum recount what Price then told them, Bouzaglou Decl. ¶ 4; Gastelum Decl. ¶ 4. Contrary to Bibi's objection, Def.'s Reply 3, 8, those accounts are not hearsay: Price's statements to plaintiffs are offered to show that they were made, not that they were true, *see* Fed. R. Evid. 801(c)(2), and Bibi's statements to Price are those of a party opponent, Fed. R. Evid. 801(d)(2)(A). Bibi's inability to recall the call does not contradict Price's account. A jury crediting Price could find that the statements were made.

A defendant may be liable for a misrepresentation made to a third party if the plaintiff received it from that party and the defendant intended it to be conveyed to the plaintiff. *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994). Bibi argues that he called Price only to hire AWL, so he could not have intended Price to repeat anything. Def.'s Mem. 15. His own testimony and

documents say otherwise. Bibi gave Price "a heads up" about the returns and Price "ran with it"; Bibi understood Price would ask other warehouses on Edward Roberts's behalf; and Bibi received from Price the addresses of other warehouses that "[y]ou wanted." Bibi Dep. 67:18–22, 75:12–18; Def.'s Ex. G. Whether the information Price relayed to each plaintiff originated with Bibi, rather than with someone else at Edward Roberts, is a question for trial.

### ***2. Duty to Disclose and Scienter***

Bibi argues that he had no duty to disclose Edward Roberts's finances, Def.'s Mem. 15–17, but plaintiffs' claims rest on an affirmative promise that Edward Roberts would pay, and on statements about the Product that were allegedly misleading because of what they left out.

A duty to disclose arises where a party has made "a partial or ambiguous statement." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The complaint pleads this theory, Compl. ¶¶ 40, 49, and Bibi does not address it. Bibi was copied on Walmart's February 9 email, Def.'s Ex. F; he acknowledged understanding, as of February 2021, that Walmart would not take the Product because it believed the Product was not lawful to sell, Bibi Dep. 53:20–54:15; and he testified that destroying the Product was considered alongside relabeling, *id.* at 55:8–14. A jury could find that describing the problem to Price as one of "labeling," with the Product being returned "for relabeling," was a misleading half-truth.

As for the promise to pay, a promise made with a "preconceived and undisclosed intention of not performing it" is actionable fraud. *Sabo v. Delman*, 3 N.Y.2d 155, 160 (1957). The record contains evidence from which a jury could infer that intent. Bibi took $1 million in draws from Edward Roberts on March 1, 2021, while knowing that Walmart was disputing "some aspect of the DisinfeX sales." Bibi Dep. 144:24–145:12. Bibi conceded that Edward Roberts stopped paying AWL's storage charges "because we weren't able to sell the product." *Id.* at 82:15–83:5. By March 31, 2021, Edward Roberts had written off about $21 million of inventory, and Bibi agreed that the Product "was essentially worthless at that time." *Id.* at 156:7–11, 156:25–157:5.

There is contrary evidence, such as Edward Roberts's payments while deliveries continued, but weighing it is for the jury.

### *3. Reliance*

Bibi's reliance arguments, Def.'s Mem. 12–14, raise questions for the jury. Whether the dates on plaintiffs' price sheets reflect the expected length of storage is disputed, *compare* Def.'s 56.1 ¶¶ 17, 29, *with* Pls.' 56.1 Resp. ¶¶ 17, 29 (ECF No. 44), and the integration clause appears in an agreement that Edward Roberts never signed, Def.'s 56.1 ¶¶ 20, 22, and is too general to bar a fraud claim in any event, *see Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320–21 (1959).

### *4. The Flammability Theory*

Plaintiffs' opposition leans heavily on a new theory: that the Product was dangerous and flammable and that Bibi failed to warn of it. Pls.' Mem. 1–2, 6–13. That theory appears nowhere in the complaint, and a party may not amend its complaint through an opposition brief. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Counts One and Two will proceed only on the theories pleaded in the complaint. *See* Compl. ¶ 18.

## III. CONCLUSION

Plaintiffs' letter-motion for leave to file the Price Declaration out of time (ECF No. 47) is GRANTED. Bibi's motion for summary judgment (ECF No. 43) is GRANTED as to Count Three and DENIED as to Counts One and Two.

**SO ORDERED.**

_/S/ Frederic Block_________

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 18, 2026